0Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XI

| | | |
|---|---|---|
| VILMARIE QUIJANO DE JESÚS "PEQUEÑO CAMPEÓN DE JESÚS" Recurrente<br><br>v.<br><br>DEPARTAMENTO DE LA FAMILIA Recurrido | KLRA202300252 | *Revisión Judicial* procedente de la Junta Adjudicativa del Departamento de la Familia<br><br>Caso Núm. 2015 PCHC 0003A<br><br>Sobre: Child Care Factura al Cobro<br><br>Cobro Indebido / Enriquecimiento Injusto / Error en Adjudicación / Parcialidad |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de septiembre de 2024.

Comparece la corporación sin fines de lucro Vilmarie Quijano De Jesús, *Pequeño Campeón de Jesús,* (la recurrente o PCJ), solicitando que revoquemos una *Resolución* emitida por la Junta Adjudicativa del Departamento de la Familia (*Junta adjudicativa del DF*), el 28 de abril de 2024. Mediante dicho dictamen fueron confirmados los hallazgos de una monitoría realizada por la Administración para el Cuidado y Desarrollo Integral de la Niñez (ACUDEN o recurrida), sobre fondos delegados a PCJ.

**I. Resumen del tracto procesal**

La ACUDEN es una agencia adscrita al Departamento de la Familia (DF), encargada de administrar los fondos federales de los Programas *Head Start/Early Head Start* y *Child Care* en Puerto Rico. Conforme a esta facultad, la ACUDEN tiene la responsabilidad de administrar tales fondos federales, lo que incluye supervisar si los gastos relacionados a estos se

NÚMERO IDENTIFICADOR

SEN2024_____

realizaron de acuerdo con la ley y la reglamentación federal aplicables, según son contratados con terceros.

En dicho contexto, la ACUDEN y PCJ suscribieron un *Contrato de Delegación de Fondos para el Desarrollo de Actividades bajo el Programa para el Cuidado y Desarrollo del Niño 2011-2012*, el 3 de octubre de 2011, (*Contrato de fondos delegados*). En lo esencial, a través del referido acuerdo, ACUDEN le delegó fondos federales a la PCJ como proveedor de servicios para el *Programa para el Cuidado y Desarrollo del Niño* (el *Programa*), durante el periodo de 1 de noviembre de 2011, al 31 de diciembre de 2012. De las cláusulas del contrato aludido surgían las obligaciones contraídas por PCJ respecto al manejo y utilización de los fondos que recibiría como proveedor de servicios[1].

Como parte de sus funciones supervisoras bajo el *Contrato de fondos delegados*, el 1 de julio de 2013, la *División de Monitoría Fiscal* (la *División*) de ACUDEN visitó las facilidades PCJ, para llevar a cabo dicha función respecto al año 2011-2012. A raíz de ello, el 12 de noviembre de 2013, la *División* le remitió a ACUDEN un *Informe de Monitoria Fiscal al Proveedor de Servicios de Mi Pequeño Campeón de Jesús CC-13-11-03*, (*Informe 2013*). El *Informe* contenía cinco hallazgos, que resultaron en una recomendación para que la ACUDEN le preparara una factura al cobro a PCJ, por un total de $60,036.06.[2]

Habiendo considerado el *Informe 2011*, al próximo día, el 13 de noviembre de 2013, la ACUDEN le remitió a PCJ una misiva, mediante correo certificado, notificándole el resultado de la monitoría. A tenor, se le informó a PCJ, que la carta tenía la función de notificarle formalmente los hallazgos contenidos en el *Informe 2013,* y el impacto económico que ello le representaría. Además, se apercibió a PCJ de que, de no estar de acuerdo con los hallazgos, tenía derecho a solicitar la reconsideración,

---

[1] Anejo IX del apéndice del *recurso de revisión judicial*, págs. 140-176.
[2] Anejo XII del apéndice del *recurso de revisión judicial*, págs. 210-213.

dentro de los próximos diez (10) días, contados a partir del recibo de la comunicación, proveyéndose la dirección de dónde debería ser presentada. Finalmente, se advirtió que, de no presentarse una petición de reconsideración, se entenderían como aceptados los hallazgos[3].

En respuesta, el 21 de noviembre de 2013, PCJ le remitió una comunicación a la Administradora de ACUDEN (la *Administradora*), mediante correo certificado, indicando tener *unas discrepancias* con los hallazgos incluidos en el *Informe 2013*. Por tanto, solicitó una reunión con la *Administradora* y la persona que realizó la monitoría, para *poder lograr un mejor entendimiento*. Añadió que para PCJ era importante poder finalizar el proceso de cierre de propuesta correspondiente al año 2012-2013 de forma responsable y transparente[4].

Luego, el 10 de diciembre de 2013, PCJ le envió otra misiva a ACUDEN, que intituló *Carta Suplementaria—Carta de Objeción fechada el 21 de noviembre de 2013 entregada personalmente a ACUDEN el día 26 de noviembre de 2013 y por correo certificado # recibo 7012-1640-4704-5913 y recibido el 25 de noviembre de 2013.*[5] En esta, presentó las razones por las cuales *discrepaba* de los hallazgos contenidos en el *Informe 2013*, proveyendo argumentación para rebatir cada uno de ellos, además de incluir su *Informe de Cierre del Año Programa 2011-2012,* compuesto por varios anejos.[6]

Posteriormente, el 16 de mayo de 2014, ACUDEN emitió un *Informe de Monitoría Fiscal al Proveedor de Servicios Mi Pequeño Campeón de Jesús CC-13-11-03*, en iguales términos al *Informe 2013.*

Pasado casi un mes, el 24 de junio de 2014, la ACUDEN emitió otro *Informe de Monitoría Fiscal al Proveedor del Servicios Mi Pequeño Campeón de Jesús CC-13-11-03—Enmienda,* pero con el único propósito de corregir

---

[3] *Íd*, págs. 208-209.
[4] Anejo V del apéndice del *recurso de revisión judicial*, pág. 9.
[5] *Íd*, págs. 11-17
[6] *Íd*, págs. 11-101.

el total a facturar en el *Informe de Monitoría Fiscal CC-13-11-03,* de 16 de mayo de 2014, por la cantidad de $68,681.12.[7]

Ante lo cual, el 14 de julio de 2014, PCJ le remitió una carta a la *Administradora*, advirtiendo que había estado objetando los resultados del *Informe 2013* desde que lo recibió inicialmente, junto a los documentos explicativos, precisando las fechas de las comunicaciones a las que hacía referencia. Reiteró no estar de acuerdo con el contenido del referido *Informe*, por las razones expuestas en los documentos suministrados.

En consecuencia, el 18 de agosto de 2014, la ACUDEN le envió una carta a PCJ informándole: haber recibido su comunicación de 14 de julio de 2014; que el foro adecuado para presentar sus objeciones al pago de facturas era la *Junta Adjudicativa del DF*, para lo cual proveyó la dirección; que con un término de quinces (15) días laborables, desde el recibo de esta comunicación, para presentar un recurso ante dicha *Junta.*

Es así como, el 14 de julio de 2014, PCJ presentó una *Apelación* ante la *Junta Adjudicativa del DF.*[8]

Recibida la referida *Apelación* por la *Junta*, dicho foro administrativo dispuso de varios asuntos procesales. En desacuerdo con sendas determinaciones interlocutorias de la *Junta Adjudicativa del DF*, PCJ acudió ante este Tribunal de Apelaciones, a través de *recurso de revisión judicial*. No obstante, mediante *Sentencia* de 22 de abril de 2021, KLRA202100200, un Panel hermano desestimó dicho *recurso de revisión judicial*, al concluir que el Tribunal de Apelaciones tenía vedado intervenir con los asuntos interlocutorios que acontecen durante los procesos adjudicativos seguidos en las agencias públicas, poseyendo autoridad solo para dilucidar órdenes o resoluciones finales.

---

[7] Anejo II del apéndice del *recurso de revisión judicial*, págs. 5 y 6.
[8] Valga advertir que PCJ **no** incluyó como parte de los anejos en el apéndice de su *recurso de revisión judicial,* copia del escrito de *Apelación* aludido, a pesar de que la Regla (59)(E)(a) de nuestro Reglamento así lo exige. 4 LPRA Ap. XXII-B.

Dispuesto lo anterior, la vista administrativa ante la *Junta del DF* fue celebrada el 26 de abril, 3 de junio y 3 de enero de 2023.[9] En esta testificaron, por la recurrente, el perito José Díaz, CPA, y la señora Vilmarie Quijano De Jesús, (señora Quijano De Jesús), presidenta de la Junta de Directores de PCJ. Por la ACUDEN testificó la señora Militza Maldonado Rosario, contadora de la División de Monitoría Fiscal.

Finalmente, el 28 de abril de 2023, la *Junta del DF* emitió la *Resolución* que nos ocupa, confirmando los hallazgos de la monitoría y acogiendo íntegramente las recomendaciones de la Oficial Examinadora que presidió las vistas. En específico, en el informe rendido por la Oficial Examinadora esta confirmó los hallazgos señalados, aunque restando de la cuantía total inicialmente requerida $2,915.24, correspondientes a una diferencia identificada en el Hallazgo 13-02, y $1,980.09 del Hallazgo 13-03, por razones explicadas en la misma *Resolución* recurrida. En definitiva, así enmendada, la factura al cobro que recomendó fuera dirigida contra PCJ resultó en un total de $50,653.17.

En desacuerdo, PCJ presentó el recurso de *revisión judicial* ante nuestra atención, alzando los siguientes señalamientos de error:

> **ERRÓ LA ACUDEN AL NO EMITIR UNA NOTIFICACIÓN CONFORME A DERECHO SOBRE LA ALEGADA FACTURA AL COBRO A LA FUNDACIÓN PEQUEÑO CAMPEÓN DE JESÚS.**
>
> **ERRÓ LA JUNTA ADJUDICATIVA DEL DEPARTAMENTO DE LA FAMILIA AL CONFIRMAR QUE EL HALLAZGO NÚM. 13-01 ERA CORRECTO.**
>
> **ERRÓ LA JUNTA ADJUDICATIVA DEL DEPARTAMENTO DE LA FAMILIA AL CONFIRMAR QUE EL HALLAZGO NÚM. 13-02 ERA CORRECTO.**
>
> **CUARTO ERROR: ERRÓ LA JUNTA ADJUDICATIVA DEL DEPARTAMENTO DE LA FAMILIA AL CONFIRMAR QUE EL HALLAZGO NÚM. 13-03 ERA CORRECTO.**
>
> **ERRÓ LA JUNTA ADJUDICATIVA DEL DEPARTAMENTO DE LA FAMILIA AL CONFIRMAR QUE EL HALLAZGO NÚM. 13-04 ERA CORRECTO.**

---

[9] En el Informe de la Oficial Examinadora resultante de dicha vista se indicó que, por motivos del paso del huracán María por Puerto Rico, se tuvo que reconstruir el expediente administrativo del caso. Anejo XI del apéndice del *recurso de revisión judicial*, pág. 184.

**ERRÓ LA JUNTA ADJUDICATIVA DEL DEPARTAMENTO DE LA FAMILIA AL CONFIRMAR QUE EL HALLAZGO NÚM. 13-05 ERA CORRECTO.**

Luego de que atendiéramos asuntos relativos a la presentación de la transcripción de la prueba oral, según peticionado por PCJ, esta parte presentó una *Moción Solicitando que se Considere Atender Señalamiento Jurisdiccional.* El alegado asunto jurisdiccional alzado por PCJ versa sobre las notificaciones que ACUDEN le remitió, atinentes a los procesos seguidos en su contra durante el trámite administrativo, que valora como defectuosas.

En oposición, el *DF*[10] compareció a través de la Oficina del Procurador General, mediante *Escrito en Cumplimiento de Resolución.* En lo referente al señalamiento sobre la presunta falta de notificación adecuada alzado por PCJ, arguyó que resultaba improcedente en esta etapa apelativa, pues no había sido planteado oportunamente ante la ACUDEN, ni ante la *Junta Adjudicativa del DF.* No obstante, aseveró que, de este tribunal concluir que tal asunto debía ser atendido, la ACUDEN sí cumplió en proveer una notificación que reunió las garantías procesales del debido proceso de ley, según requerido por nuestro ordenamiento jurídico. A estos efectos, especificó que la notificación de ACUDEN dirigida a PCJ el 18 de agosto de 2014, contenía todas las advertencias necesarias, incluyendo el término para acudir a la *Junta Adjudicativa del DF.*

El 8 de septiembre de 2023, declaramos *No Ha Lugar* la moción presentada por PCJ.

Luego de varias incidencias procesales, PCJ presentó un *Alegato Suplementario,* conforme a la transcripción de prueba estipulada sometida en apoyo del recurso de *revisión judicial.*

A su vez, el DF presentó su *Alegato en Oposición.*

---

[10] ACUDEN es un componente programático del DF, de aquí que este último comparezca por la primera.

Estamos en posición de resolver.

## II. Exposición de Derecho

Es un principio reiterado que las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 893 (2008); *Matos v. Junta Examinadora*, 165 DPR 741, 754 (2005). Lo anterior se fundamenta en el conocimiento especializado y la experiencia *(expertise)* sobre la materia que su ley habilitadora le confiere jurisdicción. *Assoc. Ins. Agencies, Inc. v. Com. de Seguros*, 144 DPR 425, 436 (1997); *Misión Ind. v. J.P. y A.A.A.*, 142 DPR 656, 672-673 (1997). En otras palabras, el conocimiento especializado de la agencia justifica que se sostengan sus determinaciones. Por lo que, en virtud de nuestro ejercicio de revisión judicial, le debemos gran deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Dpto. de Corrección y Rehabilitación*, 208 DPR 656, 9 (2022), 2022 TSPR 10; *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021).

Dentro de este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026-1027 (2020); *Rivera Concepción v. A. R. Pe.*, 152 DPR 116, 122 (2000). Esto significa que el tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS*, 205 DPR 268, 282 (2020); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

Ahora bien, esa presunción de legalidad no constituye un dogma inflexible que impide la revisión judicial si no existen las condiciones que sostienen la deferencia. Al respecto, en *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo realizó la siguiente expresión:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

## III. Aplicación del Derecho a los Hechos

a.

En el primer señalamiento de error alzado por PCJ se aduce que la ACUDEN no cumplió con varias disposiciones reglamentarias que establecen términos para realizar gestiones de cobro. En específico, PCJ sostiene ante nosotros, que en el proceso de cobro seguido en su contra por la ACUDEN, esta incumplió con los términos dispuestos en el Artículo V del Reglamento Núm. 44 del Departamento de Hacienda, *Reglamento sobre Deudas No Contributivas Existentes a Favor del Estado Libre Asociado de Puerto Rico*, para realizar las gestiones de cobro, y con la Orden Administrativa Núm. 06-001 del DF, *Orden para Establecer un Foro para Conceder Vista Administrativa a las Personas que Objetan el Pago de Facturas al Cobro que Excedan de Doscientos Dólares*. A esto añade que las notificaciones sobre cobro de dinero de dicha agencia administrativa fueron defectuosas, lo que infringió su debido proceso de ley.

Sobre lo anterior, observamos que, a pesar de la argumentación presentada por PCJ en su *recurso de revisión judicial* sobre la presunta infracción de ACUDEN a los términos de la reglamentación aludida, al examinar el expediente ante nosotros no surge que tal asunto hubiese sido planteado primero al foro administrativo ante el cual se celebró la vista adjudicativa en su fondo. Es decir, no tenemos constancia de prueba alguna que sirva para establecer que a dicho foro administrativo se le concediera la oportunidad de considerar, menos aún dirimir, la argumentación relativa a la alegada infracción de los términos reglamentarios para presentar una factura al cobro por la ACUDEN. Al contrario, tal como lo plantea el DF en su *Alegato en oposición*, aparenta que esta argumentación fue planteada por PCJ por primera vez ante el Tribunal de Apelaciones.

Según se sabe, es doctrina de la práctica apelativa que *los tribunales se abstendrán de adjudicar cuestiones no planteadas ante el Tribunal de Primera Instancia. Sánchez Ruiz v. Higuera Pérez*, 203 DPR 982, 993 (2020). Por tanto, *nos abstendremos de adjudicar cuestiones no planteadas en primera instancia. Trabal Morales v. Ruíz Rodríguez*, 125 DPR 340, 351 (1990). Esta también constituye la norma respecto a los asuntos que no fueron planteados en una vista adjudicativa llevada a cabo en el foro administrativo. Así, en *Garage Rubén Inc., v. Tribunal Superior*, 101 DPR 236, 242 (1973), nuestro Tribunal Supremo determinó no considerar en la etapa apelativa una alegación sobre si aplicaba o no cierta reglamentación administrativa, precisamente porque el asunto no fue levantado originalmente ante el foro administrativo pertinente. Sobre ello, el alto Foro zanjó que correspondía al foro administrativo resolver la referida controversia en primera instancia, con la prueba correspondiente, antes de presentarla a nivel apelativo. *Íd.*

En definitiva, al aplicar la jurisprudencia expuesta al primer señalamiento de error en el caso ante nosotros, resulta claro que CPJ no

planteó ante la *Junta Adjudicativa del DF* el señalamiento sobre la aplicación de los términos contenidos en la reglamentación citada sobre gestiones de cobro por una agencia administrativa, por lo que estamos impedidos de dirimirlo por primera vez en esta etapa apelativa.

Sin embargo, sí debemos expresarnos sobre un segundo asunto que también incluyó PCJ en el primer señalamiento de error, referente a las presuntas notificaciones defectuosas que le envió ACUDEN en cobro de las facturas debidas. Reputó el recurrente tales notificaciones como defectuosas, por no contener las advertencias sobre los remedios legales existentes para impugnarlas.

En cuanto a esto, no hay duda de que el debido proceso de ley, en su vertiente procesal, obliga al Estado a garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga mediante un proceso justo e imparcial, lo que se extiende a los trámites administrativos. *PVH Motor, LLC. v. Junta de Subastas*, 2022 TSPR 42. Por tanto, el procedimiento adjudicativo ante las agencias debe ceñirse a las garantías mínimas del debido proceso de ley, entre las cuales se cuenta la notificación adecuada del proceso. *Íd.* La notificación adecuada a las partes debe advertir del derecho de estas a procurar la revisión judicial, el término disponible para hacerlo y la fecha del archivo en autos de copia de la notificación. *Íd.* En consonancia, la Sección 3.14 de la LPAU, 3 LPRA sec. 9654, dispone, en lo pertinente, que una orden o resolución final deberá incluir la disponibilidad del recurso de reconsideración o revisión, según sea el caso.

Dicho lo anterior, sin embargo, lo cierto es que el remedio que el Tribunal Supremo ha concedido en los casos de notificaciones erróneas ha consistido en: (1) no oponerle los términos para recurrir a la parte que ha resultado afectada; (2) **otorgarle tiempo a la parte perjudicada para que ejerza su derecho de revisión judicial correspondiente,** siempre que no haya mediado incuria. (Énfasis provisto). *Horizon v. Jta. Revisora, RA*

*Holdings*, 191 DPR 228, 235-236 (2014); *Bombero Unidos v. Cuerpo de Bomberos*, 180 DPR 723 (2011); *Molini Gronau v. Corp. P.R. Dif. Púb.*, 179 DPR 674 (2010).

Examinada la jurisprudencia que precede, lo cierto es que en este caso PCJ efectivamente ejerció su derecho a que fuera celebrada una vista en su fondo ante el foro administrativo pertinente, *la Junta del DF*, donde se consideraron sus reparos a los hallazgos señalados en el *Informe de 2013,* según enmendado. Es decir, a PCJ no se le violentó el debido proceso de ley, en tanto **ya se le concedió el remedio que tenía disponible cuando media una notificación defectuosa,** la celebración de una vista en su fondo.

Abundando, aunque partiéramos de la premisa de que las comunicaciones de ACUDEN dirigidas a PCJ los días 13 de noviembre de 2013, 16 de mayo y 24 de junio de 2014 fueran defectuosas, una vez recibió la última comunicación al respecto, de 18 de agosto de 2014, en la que se le advirtió de su derecho a solicitar la celebración de una vista administrativa, y el foro ante el cual instar tal petición (la Junta Adjudicativa del DF), **este efectivamente ejerció dicho derecho a la revisión administrativa**. Valga aquí recalcar que la parte perjudicada por una notificación defectuosa tiene derecho a que se le conceda la oportunidad de solicitar una vista ante la propia agencia[11], y se considere sus planteamientos, (de no haber obrado con incuria), lo cual, reiteramos, en **este caso se concretizó con la presentación del recurso de apelación por PCJ ante la Junta Adjudicativa del DF**, y la celebración de la vista en su fondo. En definitiva, no tenemos un remedio que conceder, puesto que el derecho a la celebración de una vista

---

[11] En la notificación también se tiene que incluir el derecho de la parte perjudicada de acudir ante este Tribunal de Apelaciones mediante recurso de revisión judicial, pero este asunto no está planteado ante nosotros, y, en cualquier caso, PCJ acudió oportunamente ante nosotros.

administrativa ante el foro administrativo pertinente ya fue efectivamente ejercido.

b.

Los señalamientos de error segundo al sexto fueron discutidos por el recurrente en su *recurso de revisión judicial,* según el orden de los hallazgos identificados en la monitoría. Utilizaremos idéntico orden aquí para discutir los planteamientos de PCJ.

Antes de acometer la discusión de los señalamientos de error, valga ahora resaltar que, dada a la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, ha sido resuelto que *estas deben ser respetadas mientras la parte que las impugne **no produzca evidencia suficiente para derrotarlas**.* (Énfasis provisto). *Graciani Rodríguez v. Garaje Isla Verde, LLC.,* 202 DPR 117, 127 (2019); *Otero v. Toyota,* 163 DPR 716, 728 (2009). Para así lograrlo, corresponde a la parte que las cuestiona, *demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, **hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba presentada que tuvo ante su consideración**.* (Énfasis provisto). *Íd*; *Camacho Torres v. AAFET,* 168 DPR 66, 91 (2006). En armonía, *debe respetarse el dictamen de un foro administrativo en cuanto a la credibilidad de los testigos. Otero v. Toyota,* 163 DPR 716, 731 (2005). Además, un cuando al ejercer la función revisora los foros apelativos confrontemos testimonios conflictivos, *no debemos pasar sobre la credibilidad de estos o repesar la evidencia, pues nuestra función es tomar el récord en su totalidad y poner en vigor la orden si encontramos evidencia sustancial para sostener sus conclusiones. Íd.*

**Hallazgo Núm. 13-01**

En este primer hallazgo se concluyó que, con relación a las hojas de asistencia de los empleados de la recurrente, PCJ carecía de controles

internos, pues se observó a un empleado completando la hoja de asistencia correspondiente a la semana anterior, y los empleados no completaban la referida hoja de asistencia, a menos que fueran llamados a la oficina.

A lo anterior opone el recurrente, que la referida conclusión hecha por ACUDEN, de que no contaba había controles internos, fue a base de una sola observación, respecto a un solo empleado, por lo que no constituía una muestra suficiente para llegar a esa conclusión, y mostraba carencia de metodología, según así lo testificó su perito en la vista administrativa.

No obstante, examinada la prueba testifical identificada por CPJ en el recurso de revisión judicial para sostener su oposición a este primer hallazgo[12], nos resulta exigua, insuficiente para que podamos tildar de irrazonable la conclusión alcanzada por la agencia recurrida. Más aún, no podemos afirmar que el expediente administrativo esté falto de evidencia sustancial para sostener este primer hallazgo. En específico, el foro recurrido pudo sopesar el testimonio de la señora Rosario Maldonado, contadora de ACUDEN, en términos de la monitoría que esta realizó. Tal ejercicio de la señora Rosario Maldonado incluyó haber acudido personalmente a PCJ y: solicitar las hojas de asistencia de los empleados pagados con los fondos federales; observar a un empleado llenar su hoja de asistencia de la semana anterior; percatarse que, de los empleados no ser llamados a la oficina para llenar la hoja de asistencia, no acudían; que, al inquirir a la directora sobre algún protocolo al respecto, esta afirmó que era usual que los empleados firmaran las hojas cuando se les llamaba, (tampoco surge un protocolo de la prueba documental); explicando que no examinó el total de las hojas de asistencias, pues las monitorías se limitan a tomar una muestra[13].

---

[12] Transcripción de la prueba oral (TPO), vista celebrada el 26 de abril de 2021, págs. 64-65.
[13] TPO de la vista de 3 de junio de 2021, págs. 96-98, 99-100.

Es decir, el hallazgo se encuentra sostenido por el expediente administrativo, mediante evidencia sustancial, sin visos de arbitrariedad por parte de la ACUDEN que nos coloquen en posición de subvertirlo.

**Hallazgo Núm. 13-02**

Este hallazgo versa sobre una cláusula contractual del acuerdo suscrito por CPJ con ACUDEN, a través de la cual el primero se obligó, en lo pertinente, a *no generar economías en la partida de salarios, ni de beneficios marginales[14]*, sobre los puestos de empleados incluidos en su propuesta, (once puestos), pues debía cubrir el total de dichas vacantes, y sustituirlas tan pronto surgieran. Al confirmar en la *Resolución* recurrida que CPJ había incumplido con tal obligación, la Oficial Examinadora dejó constancia de haber dado entera credibilidad a la prueba presentada por ACUDEN en la vista administrativa celebrada, en términos de que, luego de analizar las nóminas relativas a los referidos puestos, CPJ no había cubierto el total de las vacantes.

Sobre lo cual, no pasa inadvertido que en la *Resolución* aludida el foro recurrido plasmó, a través de la inclusión de ocho tablas, las vacantes no ocupadas, y las cuantías en salarios correspondientes a tal omisión, que fue la causa del señalamiento sobre las economías generadas no autorizadas. Además, la Oficial Examinadora matizó que, a pesar del perito de CPJ haber manifestado en la vista administrativa que se había solicitado a ACUDEN un ajuste al presupuesto por las plazas vacantes de empleados, para que no se generara deuda, la prueba concerniente a la presunta petición de ajuste no fue presentada, como tampoco se contó con evidencia sobre su aprobación.

Opone a lo anterior CPJ que, a través del referido hallazgo, ACUDEN lo que pretende es recobrar unos costos de fondos que no fueron desembolsados. Añade que, contrario a lo que se indicó en la *Resolución*

---

[14] Anejo IX del *recurso de revisión judicial*, págs. 145-146.

recurrida sobre la falta de prueba en torno a la petición de ajuste de CPJ, sí fue suministrada tal prueba, consistente en la lista completa de las nóminas, los espacios ocupados y vacantes. Añade, que su perito detalló en la vista administrativa el proceso que utilizó para evaluar la alegación sobre los empleados no cubiertos, demostrando que ello no tuvo el efecto de generar economías que afectaran el contrato, ni tampoco el cuadre del año programa fiscal.

Sin embargo, al afirmar lo anterior, juzgamos que el recurrente no se ocupó en su *recurso de revisión judicial*, ni en el *Alegato*, de tratar de impugnar o contrastar la prueba testifical que desfiló ACUDEN ante el foro administrativo para sostener el hallazgo, frente a lo declarado por su perito. Más bien, la lectura de *recurso de revisión judicial*, junto al *Alegato*, lo que parece sugerirnos es que sustituyamos el juicio valorativo que hizo el foro recurrido sobre el testimonio de la señora Rosario Maldonado, testigo de ACUDEN, por el de su perito, sin indicación precisa de dónde radica la actuación arbitraria, irrazonable o ilegal que le permitiría a este foro intermedio actuar de tal manera.

Sobre lo anterior, lo cierto es que la lectura de la Transcripción de la Prueba Oral donde se recogió el testimonio de la señora Rosario Maldonado[15], testigo de ACUDEN, pone de manifiesto que la *Junta de Adjudicación del DE* contó con prueba en el expediente administrativo que sostuvo el segundo de los hallazgos bajo examen, o no nos permite concluir que fuera irrazonable. Nos referimos a que, una vez más, la prueba testifical presentada por ACUDEN a través del testimonio de la señora Rosario Maldonado, sirvió para establecer: la obligación que contrajo CPJ en el *Contrato de fondos delegados* en lo relativo a este hallazgo[16]; que la representante de CPJ había sometido un informe sobre empleados activos e inactivos con errores[17]; esto la condujo a examinar las hojas de las

---

[15] TPO de la vista de 3 de junio de 2021, a partir de la página 100.
[16] *Íd*, págs. 100-104.
[17] *Íd.*, pág. 104.

nóminas, para verificar si realmente los puestos que estaban establecidos fueron ocupados[18]; tal examen reveló, a su vez, que los puestos nunca fueron cubiertos en su totalidad[19]; que el perito de CPJ no tomó en consideración la totalidad de los puestos que estuvieron vacantes en su informe, ni que los sueldos de estos eran distintos, de ahí la discrepancia en las facturas[20]; la evaluación de las nóminas tuvo como resultado una factura al cobro de 39,431.00 por espacios no cubiertos en el año 2011-2012, lo que supuso economías en el salario no permitidas en el contrato[21].

Por otra parte, PCJ señala que la cantidad aprobada en el contrato y el presupuesto era diferente a la cantidad desembolsada de fondos federales.[22] Sin embargo, también identifica que la diferencia entre ambas cantidades era producto de tres *Facturas al Cobro* emitidas por ACUDEN.[23] Puntualizó, además, que las mencionadas facturas en su mayoría eran por costos relacionados a *espacios de niños* no cubiertos conforme al contrato.[24]

Es decir, PCJ reconoció que la totalidad del dinero fue desembolsada, con excepción de las partidas que la recurrida restó en las facturas por los espacios no cubiertos de los niños. A lo que cabe añadir que, del expediente ante nuestra consideración, no surge que la ACUDEN hubiese cobrado o restado del dinero desembolsado, cuantía alguna por los espacios de empleados no cubiertos conforme fue acordado. Se debe recalcar que la cantidad de fondos delegados se computó basándose en la cantidad de niños, así como los puestos de empleados.[25] Es decir, la cantidad del presupuesto desembolsado fue en respuesta a la cantidad de plazas requeridas. En consecuencia, en el *Balance de Comprobación*

---

[18] *Íd.*, pág. 108.
[19] *Íd.* págs. 108 y 130.
[20] *Íd*, pág. 134.
[21] *Íd.*, pág. 138.
[22] Apéndice V del recurso de revisión judicial, pág. 11-17.
[23] *Íd.,* pág. 14.
[24] *Íd.*
[25] TPO de la vista de 3 de junio de 2021, pág. 104.

emitido por ACUDEN, se detallaron las cantidades específicas desembolsadas para cubrir cada una de las categorías contempladas en el contrato, entre ellas, los salarios para cubrir la nómina de los puestos de empleados.[26] De esta manera, el dinero desembolsado tenía que cubrir cada una de las categorías para las cuales estaba destinado. Acorde con ello, no cubrir todos los puestos requeridos, o sustituirlos tan pronto estuvieran vacantes, sí implicaba el incumplimiento con el contrato, y que PCJ generara economías por los salarios que se contemplaron en los desembolsos de fondos federales, y que estuvieron vacantes durante el transcurso del periodo 2011-2012.

Sin tener que reiterar lo ya dicho, al examinar el conjunto de la prueba con la que contó el foro administrativo para sostener el hallazgo bajo discusión, nos resulta claro que no estamos ante a una de las situaciones que no permitirían interferir con la deferencia que debemos mostrar ante las determinaciones administrativas.

**Hallazgo 13-03**

En este hallazgo se determinó que PCJ utilizó partidas del año programa 2011-2012, disponibles al 30 de septiembre de 2012, para cubrir gastos del año 2012-2013. A tenor, la Oficial Examinadora resolvió que los fondos no obligados del año programa 2011-2012 debían ser devueltos, puesto que no podían ser utilizados para obligaciones de otros años. Asimismo, concluyó que en la cuenta bancaria exclusiva para el depósito de los fondos delegados de la ACUDEN, número 157-22602, se depositaron fondos privados, contrario a lo establecido en el *Contrato de fondos delegados*.

A la luz de lo anterior, en la *Resolución* recurrida, el foro administrativo detalló las transacciones que se hicieron con el dinero correspondiente al periodo del año programa 2011-2012, según surgían

---

[26] Apéndice VIII del recurso de revisión judicial, pág. 139.

en los estados de cuenta, a partir del 30 de septiembre de 2012 cuando dicho programa había culminado. En esencia, se indicó que para esa fecha la cuenta de banco 157-226204 tenía un balance inicial de $10,442.63, el cual identificó como un remanente. Así, la Oficial Examinadora señaló que el 19 de octubre de 2012, se pagó la cantidad de $2,949.79, por concepto de nómina de la primera quincena de octubre de 2012 de varios empleados. Posteriormente, el 13 de noviembre de 2012, se hicieron dos depósitos en la cuenta de fondos privados, para un total de $13,101.13. El subsiguiente movimiento en la cuenta bancaria sucedió el 7 de diciembre de 2012, cuando PCJ depositó $2,000.00, proveniente de fondos privados. Además, el 24 de diciembre de 2012, se realizó un depósito en la cuenta de los fondos delegados de ACUDEN por la cantidad de $23,106.75 (correspondientes al periodo 2011-2012). Por último, surge de la *Resolución* que, en el transcurso del 17 al 24 de diciembre de 2012, se utilizaron los fondos de la cuenta para el pago de la nómina de varios empleados concerniente a la segunda quincena de noviembre de 2012 y la primera quincena de diciembre de 2012, para un total de $15,855.03.[27] Finalmente, concluyó que PCJ debía devolver por fondos no obligados del año programa 2011-2012 la cantidad de $16,824.73.

Por su parte, la recurrente argumenta que de la propia *Resolución* surge que devolvió un sobrante de $4,487.56. A tenor, sostiene que dicha devolución subsana el hallazgo relacionado al uso de fondos del año programa 2011-2012 para gastos de otro año. Asimismo, señala que del *Informe de Cierre del Programa 2011-2012,* donde surge el sobrante de $4,487.56, se tomaron en cuenta todos los ingresos recibidos menos los gastos, incluyendo aquellos pagados luego del cierre del programa, para determinar si había algún sobrante o deficiente. Consecuentemente, esgrime que el referido informe no fue cuestionado y su resultado fue

---

[27] Dichas obligaciones correspondían al año programa 2012-2013.

aceptado, así que no podía subsistir el hallazgo sobre el uso temporero de fondos para un programa posterior.

Además, PCJ plantea que el *Contrato de fondos delegados* operaba bajo el método de petición de fondos. Empero, aduce que ACUDEN actuó contrario a lo acordado, convirtiendo el contrato en uno de reembolso de gastos. A raíz de ello, plantea que el comportamiento de la recurrida creó un desfase en el movimiento de los fondos, viéndose obligada a solicitar fondos privados para compensar el flujo de efectivo y así poder cumplir con las obligaciones.[28]

Respecto a lo señalado, surge de la Transcripción de la Prueba Oral, específicamente del testimonio de la señora Rosario Maldonado, que el dinero delegado en el año programa 2011-2012 estaba presupuestado para ese año y no podía ser utilizado para responsabilidades del año programa 2012-2013.[29] Así lo confirma la primera cláusula del *Contrato de fondos delegados*, la cual establece que los fondos asignados por la ACUDEN cubrirían el periodo de vigencia de este, es decir, el año programa 2011-2012.[30]

En su testimonio, la señora Rosario Maldonado añadió que analizó los estados bancarios de la cuenta autorizada para depositar los fondos de la ACUDEN, y se percató que la recurrente utilizó fondos del año programa 2011-2012 para pagar la nómina de octubre, noviembre y diciembre.[31]. Sobre lo anterior, el perito de PCJ, señor José Díaz Crespo, testificó que la recurrente utilizó los fondos disponibles al 30 de septiembre de 2012 para cubrir gastos del año programa 2012-2013.[32] Es decir, el propio perito de PCJ aceptó que el hallazgo era correcto, no obstante, argumentó que el

---

[28] TPO de la vista de 26 de abril de 2021, págs. 79-80.
[29] TPO de la vista de 3 de junio de 2021, págs. 138-139
[30] Apéndice IX del recurso de revisión, pág. 143
[31] TPO de la vista de 3 de junio de 2021, pág. 139.
[32] TPO de la vista de 26 de abril de 2021, pág. 81

mismo era uno de carácter administrativo que no conlleva la devolución de fondos, pues el *Informe de Cierre Anual* no fue cuestionado.[33]

Según ya dicho, el perito de PCJ reconoció que la recurrente utilizó fondos del año programa 2011-2012 para cubrir los gastos de otro programa, en incumplimiento con el contrato. La Oficial Examinadora, quien tuvo los estados de la cuenta 157-226204 ante su consideración, confirmó las transacciones realizadas en la cuenta exclusiva para los fondos de ACUDEN. Conforme a lo anterior, concluyó que se usaron fondos del año programa 2011-2012 para el próximo año. De igual forma, se tomaron en consideración los testimonios presentados en la vista, que confirmaron el uso de fondos del último trimestre del año programa 2011-2012 para otro año programa. La cláusula décima del *Contrato* dispone que se deberá devolver cualquier remanente de fondos no obligados reflejados en el *Informe de Cierre* correspondiente a los fondos de ACUDEN, anticipados durante el periodo que cubre el año programa contratado.[34] Por lo anterior, no cabe modificación alguna a la conclusión de que PCJ utilizó fondos del año programa 2011-2012 para cubrir gastos de otro año programa, cuando debía devolver el remanente conforme el contrato entre las partes.

En lo que respecta a la cuenta bancaria, la cláusula séptima del Contrato establece que PCJ debía tener una cuenta exclusiva para los fondos delegados en el contrato.[35] La señora Rosario Maldonado, testigo de ACUDEN, manifestó que de los estados de cuenta surgía que, en noviembre de 2012, hubo varios depósitos de fondos privados en la cuenta que PCJ tenía para los fondos federales delegados. Por su parte, PCJ sostuvo que el foro recurrido erró al tomar en consideración que en la cuenta exclusiva se depositaron fondos privados, mezclándose el dinero con el público, puesto que fue la ACUDEN quien lo colocó en dicha

---

[33] Apéndice VI del recurso de revisión, pág. 109.
[34] Apéndice IX del recurso de revisión, págs. 153-154.
[35] *Íd.,* págs. 149-152.

posición, al no haber desembolsado a tiempo los fondos del último trimestre del año programa 2011-2012.[36]

No hay controversia genuina sobre el hecho de que PCJ estaba obligada a mantener una cuenta bancaria **exclusiva** para el depósito de los fondos delegados por la ACUDEN, en tanto así fue establecido en el *Contrato de fondos delegados,* de modo que este señalamiento no merece mayor consideración, pues quedó demostrado el incumplimiento con dicha cláusula.

Por último, en cuanto al cómputo del sobrante a ser rembolsado, la recurrente no nos colocó en posición de examinar los estados de cuenta del periodo en cuestión, para verificar el cálculo realizado por la *Junta adjudicativa del DF*. Tal omisión imposibilitó nuestra función revisora respecto al monto de $16,824.73, por concepto de remanente, determinado por el foro recurrido. Cónsono con lo anterior, debemos concederle deferencia al foro administrativo, quien tuvo ante su consideración la totalidad de la prueba.

### Hallazgo 13-04

Este último asunto tampoco merece mayor elaboración, de modo que dispondremos de él brevemente. El hallazgo se puede reducir a los siguientes datos: (1) la contratación de servicios por PCJ bajo el *Contrato de fondos delegados* requería que la contratación fuera por escrito, y con anterioridad a que se recibieran los servicios; (2) la señora Nancy Arocho fue nombrada como directora ejecutiva de PCJ, mediante un contrato escrito de empleo, del 7 de noviembre de 2011 al 31 de diciembre del mismo año; (3) el contrato de la señora Arocho venció en la fecha prevista, diciembre de 2011, **pero esta continuó dando sus servicios en PCJ durante enero de 2012, sin contar con un contrato escrito**; (4) PCJ

---

[36] TPO de la vista de 26 de abril de 2021, pág. 81.
En cuanto al asunto relativo a que ACUDEN desembolsó los fondos del último trimestre de forma tardía, la Junta Adjudicativa concluyó conforme la prueba presentada, que PCJ sometió tarde los documentos fiscales requeridos.

**pagó en concepto de nómina a la señora Arocho $1,800.24, por los servicios prestados durante el mes de enero 2012, con fondos de la propuesta**.

Al discutir este hallazgo en su *recurso de revisión judicial,* PCJ inicia por advertir que, en lo esencial, las partes estipularon los hechos expuestos en el párrafo que antecede, (en lo referente a los términos de la contratación de la señora Arocho para continuar sus servicios hasta el 31 de enero de 2012). Sin embargo, juzga la recurrente que en la vista administrativa fue establecido que la señora Arocho sí rindió servicios para PCJ durante el mes de enero de 2012, por servicios que estaban concebidos dentro de *Contrato de fondos delegados*, y ello justificaba el pago realizado. No tiene razón.

Basta una sola lectura del inciso 11(b) de la cláusula *Decimosexta* del *Contrato de fondos delegados*[37] para concluir que de allí surgía, sin necesidad de mayor interpretación, la obligación de PCJ para que la prestación de servicios bajo la propuesta tuviera que darse; (1) mediante contrato por escrito y; (2) previo a que fueran recibidos los servicios contratados. Por tanto, estipulado por las partes que la señora Arocho se mantuvo laborando para PCJ durante enero de 2012, **sin un contrato por escrito previo al recibo de dichos servicios**, esto resultaba suficiente para sostener el hallazgo bajo discusión. En este contexto, resulta fútil la discusión sobre si medió un acuerdo *verbal* entre PCJ y la señora Arocho antes de que prestara sus servicios en enero de 2012, o si los servicios fueron realmente provistos. Simplemente, ante la ausencia del contrato escrito, la señora Arocho no podía continuar dando sus servicios a PCJ, y menos este pretender utilizar los fondos de la propuesta para el pago de dichos servicios, acto vetado por *Contrato de fondos delegados*.

---

[37] Anejo IX del recurso de revisión judicial, págs. 20 y 23.

En definitiva, evaluados todos los asuntos alzados por PCJ a la luz de los criterios que guían nuestro ejercicio revisor de las resoluciones administrativas finales, no encontramos las circunstancias que justificarían nuestra intervención con el dictamen recurrido. Al contrario, juzgamos que la determinación está basada en evidencia sustancial proveniente del expediente administrativo, que justifica concedamos deferencia a la *Resolución* emitida por la *Junta del DF*.

**IV. Parte dispositiva**

Por los fundamentos expuestos, *Confirmamos* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones